WO                                                                                          MDR

1
2
3
4
5

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Douglas Wayne Derello, | No.  CV 21-00129-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Christopher Romero, et al., | |
| Defendants. | |

On January 22, 2021, Plaintiff Douglas Wayne Derello, who is confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, filed a Motion to Exceed Number of Pages and lodged a pro se civil rights Complaint.  In a February 3, 2021 Order, the Court granted the Motion to Exceed, directed the Clerk of Court to file the lodged Complaint, and gave Plaintiff thirty days to either pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis.  The same day, the Clerk of Court filed the Complaint.

On February 25, 2021, Plaintiff filed a "Motion Informing Court Regarding Status of Application to Proceed In Forma Pauperis," requesting the Court (a) compel Defendants to immediately provide Plaintiff's six-month trust account statement and (b) grant Plaintiff until March 19, 2021, to submit the trust account statement and his Application to Proceed In Forma Pauperis.  In a March 3, 2021 Order, the Court granted Plaintiff's request for an extension of time and denied the remainder of the Motion.  On April 5, 2021, the Clerk of

JDDL-K

Court entered a Judgment of dismissal, having not received either the filing and administrative fees or an Application to Proceed In Forma Pauperis.

On April 15, 2021, Plaintiff filed a Motion to the Court and an Application to Proceed In Forma Pauperis.  On April 22, 2021, he filed a Motion to Support.  On May 27, 2021, Plaintiff filed a Motion for Status.  In a June 4, 2021 Order, the Court granted the Motion to the Court and the Motion for Status, took no action on the Motion to Support, vacated the Judgment and directed the Clerk of Court to reopen this action, granted the Application to Proceed, and dismissed the Complaint because it did not comply with Rule 8 of the Federal Rules of Civil Procedure and Rule 3.4 of the Local Rules of Civil Procedure.  The Court gave Plaintiff thirty days to file an amended complaint that cured the deficiencies identified in this Order.

On July 1, 2021, Plaintiff filed a Motion for Extension of Time, which the Court granted in a July 9, 2021 Order.  On July 23, 2021, Plaintiff filed his First Amended Complaint (Doc. 19).  On July 29, 2021, he filed a Motion to Insert Page (Doc. 20).  On August 16, 2021, Plaintiff filed an Emergency Motion to Request that the Court Issue an Order to Preserve (Doc. 21).  The Court will grant the Motion to Insert Page, consider the page attached to the Motion as part of the First Amended Complaint, dismiss the First Amended Complaint with leave to amend, and deny without prejudice the Emergency Motion.

## I.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does

1  not demand detailed factual allegations, "it demands more than an unadorned, the-

2  defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3  (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

4  conclusory statements, do not suffice."  *Id.*

5       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

6  claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

7  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

8  that allows the court to draw the reasonable inference that the defendant is liable for the

9  misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for

10 relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

11 experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

12 allegations may be consistent with a constitutional claim, a court must assess whether there

13 are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

14      But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

15 must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342

16 (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent

17 standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551

18 U.S. 89, 94 (2007) (per curiam)).

19      If the Court determines that a pleading could be cured by the allegation of other

20 facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal

21 of the action.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

22 Plaintiff's First Amended Complaint will be dismissed for failure to state a claim, but

23 because it may possibly be amended to state a claim, the Court will dismiss it with leave

24 to amend.

25 **II.    Motion to Insert Page**

26      In his Motion to Insert Page, Plaintiff requests to insert a page that was mistakenly

27 omitted from the First Amended Complaint.  The Court, in its discretion, will grant the

28

Motion and will consider as part of the First Amended Complaint the information contained in the page attached to the Motion to Insert Page.

**III.     First Amended Complaint**

In his three-count First Amended Complaint, Plaintiff names as Defendants Deputy Warden Sanchez; Assistant Deputy Warden Aplas; Lieutenant Duron; Special Security Unit (SSU) Sergeant Christopher Romero; Sergeants Griggs and Nathaniel Harris; Corrections Officer (CO) III/Disciplinary Coordinator Hiatt; CO IIs Bustillos, Diaz, Maydon, Garcia, and Ortiz; and Special Management Unit (SMU) employees John/Jane Does.  In his Request for Relief, Plaintiff seeks declaratory and injunctive relief and monetary damages.

In **Count One**, Plaintiff alleges Defendants Romero, Sanchez, and Aplas subjected him to retaliation in violation of his First and Eighth Amendment rights.  He asserts that while he was confined in the SMU, his CO III was trying to get him moved back to a medium custody unit.  Plaintiff contends that on June 9, 2020, Defendant Romero told Plaintiff that he had heard Plaintiff was trying to get moved and, if Plaintiff "would agree to help [him] by looking into some issues on the yard for [him,] then [he] could get [Plaintiff] back to [the] Cook Unit."  Plaintiff asserts that he refused to "be a Snitch," filed an informal complaint, and informed his CO III about what Defendant Romero had said.

Plaintiff asserts that in early July 2020, his CO III told Plaintiff that she could not get him into a private prison.  Plaintiff claims he subsequently pursued a grievance against Defendant Romero.  He asserts that on July 20, 2020, he was moved to the Cook Unit.  He claims he initially had been told he would be housed in the medical building because he was in a wheelchair, but he was not housed in the medical building.  Plaintiff contends that "per [Defendant] Romero," he was housed in the building that was the furthest from the medical building, the dining hall, and "yard control[]/phones."

Plaintiff also asserts that when he "wheeled onto [t]he yard," he was approached by several inmates who told Plaintiff that he "cannot stay here" because "SSU said that you were telling and filing grievances against [Defendant] Romero."  Finally, Plaintiff contends

that on July 30, 2020, he explained to Defendants Sanchez and Aplas that he had been housed in the furthest building "d[ue] to the retaliation of [Defendant] Romero and [Plaintiff's] grievance . . . against him." Plaintiff alleges that "by their inactions[,] plaintiff was left there."

In **Count Two**, Plaintiff alleges Defendants Harris, Griggs, Garcia, Maydon, Diaz, Ortiz, Bustillos, and John/Jane Does "subjected [him] to cru[e]l and unus[u]al punishment out of retaliation," conspired to deprive him of his property, and "purposely destroyed and gave away [his] property," in violation his First, Eighth, and Fourteenth Amendments rights and Arizona Revised Statutes section 31-228(A).

Plaintiff claims that on September 15, 2020, his property was brought to his housing unit. He contends that on September 18, Defendant Harris, "through his actions/inactions," allowed Defendant Garcia to retrieve Plaintiff's property from the property room and, once he became aware that Plaintiff's property was missing, delayed addressing it. Plaintiff asserts Defendant Harris was (a) aware that officers who were not property officers were "destroying, losing, or allowing other inmates to steal . . . property" and (b) "had prior knowledge of the extreme importance of plaintiff's legal material that was with plaintiff's property." Plaintiff claims Defendant Harris's "inactions allowed [Plaintiff's] property to be damaged, destroyed, and lost."

Plaintiff alleges that on September 18, 2020, Defendant Garcia placed Plaintiff's property outside the pod door; told Plaintiff, "here is your property"; did not bring the property to Plaintiff's cell; and told Plaintiff that Defendants Maydon or Bustillos would bring the property to Plaintiff. Plaintiff asserts that over a five-hour period, he continually asked Defendants Bustillos, Maydon, and Diaz to give him his property. He claims that during the "last walk of their shift," he pleaded for his property, but they "taunted/mocked him," moved his property to hallway, and left it there.

Plaintiff contends that Defendant Ortiz was the pod officer for the next shift and that Plaintiff explained "the entire situation" to him. He claims Defendant Ortiz said that Plaintiff's property was in the hallway, but refused to give Plaintiff the property, even

though Plaintiff begged for the property and explained that other inmates who were working as porters and sanitation crew members had been known to steal property that was sitting out unprotected.

Plaintiff alleges that the following morning, September 19, 2020, Defendants Maydon, Bustillos, and Diaz repeatedly told him that "your property is there[,] we'll get it to you," but did not give him his property.  He claims that when he asked them "why they were doing this," they laughed and said, "ask [Defendant] Duron."  Plaintiff asserts he asked to see Defendant Griggs, "to no avail."

He contends that when Defendant Ortiz began working on September 19, 2020, Plaintiff told him that he still did not have his property.  According to Plaintiff, Defendant Ortiz said, "do[es] that come as a surprise to you[?]"  Plaintiff also asserts that later in the evening, when two sanitation workers asked who the property belonged to, Defendant Ortiz said, "some black dude in pod 5[.]  I do not care what you do with it.  The last shift said he informed on a [lieutenant] and [i]nmates smoking at Cook[ U]nit."  Plaintiff asserts he asked Defendant Ortiz if he could talk to Defendant Ortiz's supervisor because he had heard what Defendant Ortiz had said to the sanitation workers.  Plaintiff claims Defendant Ortiz refused to feed Plaintiff that morning.

Plaintiff alleges that on September 20, 2020, when Defendants Maydon, Bustillos, and Diaz were not at work, Plaintiff "explained everything" to another officer, who said that "there's no way that should have happened."  The officer returned later in the day and told Plaintiff that he had looked around and did not see Plaintiff's property anywhere.  Plaintiff claims that when he told the officer that he had been trying to see a sergeant, the officer said that he did not think one would come down because it was a Sunday, but that the officer would personally talk to Defendant Harris the following day.

The following day, the officer spoke to Defendant Harris, who allegedly told the officer to tell Plaintiff to wait until Wednesday, when Defendants Garcia, Maydon, Bustillos, and Diaz were scheduled to return to work and that Defendant Harris would then "find out what happened to the property."  Plaintiff contends he asked the officer why

Defendant Harris would say to wait until Wednesday, and explained that (1) if inmates stole his property, they would have more time to "barter it off" and (2) that Defendant Harris could either call Defendants Garcia, Maydon, Bustillos, and Diaz on the phone or tell the sanitation worker inmates to return the property or lose their jobs.  According to Plaintiff, the officer said, " [Defendant] Harris said let him handle it, and for whatever reason[,] he feels that his way is the best."

Plaintiff asserts that on Wednesday, September 23, 2020, Defendant Garcia and another officer tried to bring Plaintiff's property to him, but Plaintiff refused to accept it unless a sergeant was there to witness that "a lot of the property initially brought by [Defendant] Garcia on [September 18, 2020,] was now missing."  Plaintiff claims he told Defendant Garcia to call Defendant Harris to "verify this" because Plaintiff had seen, from his cell, the property Defendant Garcia had originally brought, and "this [wa]s way less." Plaintiff contends another officer told Plaintiff that Defendant Harris was not going to come down and was not going to send a property officer down.

Plaintiff claims that on September 24, 2020, he began "banging on the door to get someone to address this issue," and spoke to his counselor, who explained that Plaintiff's property was in Defendant Griggs's office and suggested that Plaintiff "[a]ccept what's left of it," so Plaintiff would know what was missing.  Plaintiff contends that thirty minutes later, Defendant Griggs brought his property, but all of his "appliances, clothing, legal material, and other items" were missing.  Plaintiff contends that on September 30, 2020, Plaintiff's television was discovered under the control tower.

In **Count Three**, Plaintiff raises a claim against Defendants Sanchez, Stickley, Romero, Duron, and Hiatt regarding disciplinary proceedings.  He contends Defendants Sanchez and Stickley: (1) "allowed their staff to deliberately violate the Disciplinary and Grievance policy to protect plaintiff from retaliation and due process"; (2) allowed Defendants Romero, Duron, and Hiatt to "violate plaintiff's due process rights and . . . become complicit in the conspiracy of that violation"; (3) allowed Defendants Romero and Hiatt to threaten Plaintiff and, when Plaintiff "would not bend to the will of their threat[,]

they prevented plaintiff from exercising his due process rights"; and (4) "deliberately used their positions to violate policy that they have allowed a practice and custom to be established to cover-up their inappropriate conduct."

Plaintiff alleges Defendant Romero "allowed inmates to plant a weapon" in retaliation for Plaintiff filing a grievance against him and for refusing "to be an underling for him" and "allowed plaintiff to be issued a disciplinary for that weapon."  Plaintiff contends that on August 27, 2020, Defendants Romero, Duron, and Hiatt issued a disciplinary write-up accusing Plaintiff of possessing a weapon.  He claims he was "set up as though he had a weapon" and Defendants subsequently "conspired to make that frame up stick."

Plaintiff alleges that when Defendant Hiatt gave him the write-up on September 16, 2020, he tried to explain to Defendant Hiatt that his due process rights were being violated because the write-up was written on August 27, but was not given to Plaintiff until September 16, and because Defendant Hiatt had not shown Plaintiff a "postponement request."  Plaintiff claims he also told Defendant Hiatt that he had been requesting the video of the incident since the incident occurred.  He contends Defendant Hiatt stated that he had been made aware of the video, but "they probably do no still have it" because more than two weeks had passed since the incident and "[i]t may have cycled."  Plaintiff asserts that when he asked Defendant Hiatt if he had seen the video, Defendant Hiatt responded that there was "no need to" because "this will be going to" the Disciplinary Hearing Officer (DHO).

Plaintiff claims that on September 27, 2020, Defendant Hiatt and the DHO took Plaintiff to a hearing.  He asserts that the DHO "questioned the elements of the written report" and Plaintiff informed the DHO that Defendant Hiatt only gave Plaintiff one piece of paper at the initial hearing and that the paper "d[id] not state the truth of the incident [be]cause the reporting officer first claimed the shank fell from a[n] envelope," but the write-up "d[id] not indicate [an] envelope."  Plaintiff contends the DHO found a supplemental report, which Plaintiff had never received, which mentioned the envelope

and "falling from the back of the wheelchair without [Plaintiff] not being by it."  Plaintiff ages he explained to the DHO "how it was during a mass movement at 2:00 a.m. . . . [and Plaintiff] explained everything to him."  Plaintiff asserts that the DHO told Defendant Hiatt to contact the Cook Unit to get the video footage because they needed more evidence.

Plaintiff contends that, instead, Defendant Hiatt got a continuance until October 1, 2020, at which point a different DHO conducted the hearing.  That DHO said that "the picture of the Shank was all that he needed  for evidence" and found Plaintiff guilty.  Plaintiff asserts he was not allowed to present a defense and was "not allowed the complete disciplinary report, video, or any other reports," some of which, he believes, were "submitted after [Defendant] Duron read the Initial report."  Plaintiff claims he lost privileges for thirty days and was placed in "Max Segregation," where he will remain for at least another year.

Plaintiff also contends Defendants Hiatt and Romero violated established policy and "conspired to block plaintiff's due process."  He alleges that on October 13, 2020, Defendant Hiatt came to rewrite Plaintiff's disciplinary appeal.  Plaintiff claims he "initially refused because[,] per policy[, Defendant Hiatt] should have appointed someone else."  He asserts Defendant Hiatt told him, "your appeal has been in already[,] we have exceeded time frame[,] the [Deputy Warden] is offering you this last chance."  Plaintiff alleges he "concurred" and, rather than the Cook Unit Deputy Warden ruling on the first-step appeal, it was given to Defendant Stickley, who Plaintiff had sued twice.  Plaintiff claims Defendant Stickley "upheld the verdict/sanctions."

Plaintiff asserts that on October 27, 2020, Defendant Hiatt told Plaintiff that he had received Plaintiff's second appeal, but had not forwarded it yet because Defendant Romero "was going to come talk to [him]."  Plaintiff claims he told Defendant Hiatt to, "get my appeal in."

Plaintiff contends that on October 28, 2020, Defendant Romero met with Plaintiff, told Plaintiff that the videotape was gone, and asked Plaintiff to find out some information

1  for him.  Plaintiff alleges he told Defendant Romero, "HELL NO."  He claims Defendant

2  Romero said, "you're fucking up Derello."

3      Plaintiff alleges that the following day, Defendant Hiatt told Plaintiff, "I hear things

4  did not g[]o well with you and [Defendant] Romero."  Plaintiff asserts he told Defendant

5  Hiatt that it was wrong to hold his appeal, noting that it should have been processed within

6  five days.  He also told Defendant Hiatt that they knew Plaintiff was innocent and "they

7  are trying to do [him] wrong."  Plaintiff contends he found out in December 2020 that his

8  second appeal had never been processed.

9  **IV.    Failure to State a Claim**

10      Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519,

11  520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey*

12  *v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a

13  civil rights complaint may not supply essential elements of the claim that were not initially

14  pled.  *Id*.

15      **A.    Eighth Amendment**

16      To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must

17  meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively,

18  sufficiently serious" such that the "official's act or omission must result in the denial of the

19  minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834

20  (1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently

21  culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or

22  safety."  *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than

23  negligence or lack of ordinary due care for the prisoner's safety.  *Id.* at 835.  In defining

24  "deliberate indifference" in this context, the Supreme Court has imposed a subjective test:

25  "the official must both be aware of facts from which the inference could be drawn that a

26  substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* at 837

27  (emphasis added).

28  . . . .

1    **1.    Count One**

2        Plaintiff's allegations do not support a conclusion that being placed in a housing

3    unit far away from the medical building, dining hall, telephones, and "yard control"

4    resulted in the denial of minimal civilized measure of life's necessities or that Defendants

5    Romero, Sanchez, and Aplas were deliberately indifferent to his health or safety.

6    Therefore, the Court will dismiss without prejudice Plaintiff's Eighth Amendment claim

7    in Count One against Defendants Romero, Sanchez, and Aplas.

8    **2.    Count Two**

9        The only allegation in Count Two that could conceivably give rise to an Eighth

10   Amendment claim is Plaintiff's assertion that Defendant Ortiz refused to feed Plaintiff in

11   the morning on September 19, 2020.  However, this was, at best, a de minimis deprivation

12   and did not rise to the level of a constitutional violation.  *See Wilson v. Pima County Jail*,

13   256 F. App'x 949, 950 (9th Cir. 2007) ("The district court properly granted summary

14   judgment . . . because [plaintiff] did not raise a triable issue as to whether he suffered a

15   sufficiently serious deprivation under section 1983 when [the officer] took away his

16   lunch."); *Merriman v. Lizarraga*, 2017 WL 4340041, at *6 (E.D. Cal. Sept. 29, 2017)

17   (allegation that plaintiff was deprived of one meal was "insufficient to state a cognizable

18   civil rights claim"); *Brooks v. Daniels*,  2012 WL 5866453, at *2 (W.D. Ky. Nov. 19, 2012)

19   ("Plaintiffs have alleged only that they missed one meal.  Plaintiffs have failed to state a

20   claim under the Fourteenth Amendment.").  Thus, the Court will dismiss without prejudice

21   Plaintiff's Eighth Amendment claim in Count Two.

22   **B.    Retaliation**

23       A viable claim of First Amendment retaliation contains five basic elements: (1) an

24   assertion that a state actor took some adverse action against an inmate (2) because of

25   (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

26   of his First Amendment rights (or that the inmate suffered more than minimal harm) and

27   (5) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408

28   F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir.

**JDDL-K**

1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest").   The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

### 1.   Count One

Plaintiff's allegations do not support a conclusion that Defendant Romero's alleged retaliation—placing Plaintiff in the housing unit furthest from the medical building— chilled Plaintiff's exercise his First Amendment rights or caused Plaintiff to suffer more than minimal harm.  Thus, the Court will dismiss without prejudice Plaintiff's retaliation claim against Defendant Romero.

Although Plaintiff contends Defendants Sanchez and Aplas took no action after he informed them of Defendant Romero's alleged retaliation, he alleges nothing to suggest that *their* inaction was retaliation for Plaintiff filing a grievance against Defendant Romero or that his grievance was a substantial or motivating factor behind their inaction.  Absent more, Plaintiff's allegations are too vague and conclusory to state a retaliation claim against Defendants Sanchez and Aplas.  Therefore, Thus, the Court will dismiss without prejudice Plaintiff's retaliation claim against Defendants Sanchez and Aplas.

### 2.   Count Two

Plaintiff's allegations do not support a conclusion that the exercise of his First Amendment rights was a substantial or motivating factor behind any Defendant's conduct. To the extent Plaintiff's retaliation claim is premised on Defendant Ortiz's statement to the sanitation workers that he did not care what they did with Plaintiff's property because "[t]he last shift said he informed on a [lieutenant] and [i]nmates smoking at Cook[ U]nit," Plaintiff does not allege that the sanitation workers actually took his property at that time based on Defendant Ortiz's statement.  To the extent Plaintiff is alleging Defendant Ortiz

did not feed him in retaliation for asking to speak to Defendant Ortiz's sergeant, this was, as previously noted, a de minimis harm.  Thus, the Court will dismiss without prejudice Plaintiff's retaliation claim in Count Two.

### 3. Count Three

Plaintiff's allegations of retaliation by Defendant Romero are vague, confusing, and conclusory.  They are insufficient to state a claim, and, therefore, the Court will dismiss without prejudice Plaintiff's retaliation claim in Count Three.

### C. Property Claim

Plaintiff's property claim arises, if at all, under the Due Process Clause of the Fourteenth Amendment.  However, the "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Even unauthorized and intentional deprivations of property do not constitute a violation of procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The availability of a common-law tort suit against a state employee constitutes an adequate post-deprivation remedy.  *Id.* at 534-35.  Moreover, Arizona provides a meaningful and adequate post-deprivation remedy through the prison grievance system, specifically Department Order 909(8.0).  *Dennison v. Ryan*, 522 F. App'x 414, 417-18 (9th Cir. 2013); *Aldrete v. Ariz. Dep't of Corr.*, 2011 WL 30959, at *7 (D. Ariz. Jan. 3, 2011); *see also Wright v. Riveland*, 219 F.3d 905, 918 (9th Cir. 2000) (both state tort claims *and* prison grievance procedures provide adequate post-deprivation remedies).  Plaintiff, therefore, has failed to state a property claim in Count Two.

### D. Due Process in Disciplinary Proceedings

In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard.  Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff does not specify the conditions to which he was subjected when he was placed in maximum custody confinement and does not allege that the conditions imposed atypical and significant hardships. *See Sandin*, 515 U.S. at 475-76, 487 (30 days' disciplinary segregation is not atypical and significant); *Smith v. Mensinger*, 293 F.3d 641, 654 (3rd Cir. 2002) (seven months of disciplinary confinement "does not, on its own, violate a protected liberty interest"); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two and one-half years' administrative segregation is not atypical and significant); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating a prisoner's due process rights); *Lucero v. Russell*, 741 F.2d 1129 (9th Cir. 1984) (administrative transfer to maximum security without a hearing does not infringe on any protected liberty interest). Thus, the Court will dismiss without prejudice Plaintiff's due process claim in Count Three.

. . . .

. . . .

### E.    Conspiracy

To state a conspiracy claim, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted).  The Court "need not, however, accept as true allegations that . . . are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.").

Plaintiff has not made any factual allegations to support an agreement or meeting of the minds between Defendants.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor is there a "conspiracy" simply because Defendants engaged in the same conduct.  *See Myers v. City of Hermosa Beach*, 299 F. App'x 744, 747 (9th Cir. 2008) ("Before a conspiracy claim can be sustained, a plaintiff must show a meeting of the minds by the so-called conspirators. . . .  [T]he evidence adduced must demonstrate more than the mere fact that two people did or said the same thing; the evidence must actually point to an agreement.") (citations omitted); *cf. Ting v. United States*, 927 F.2d 1504, 1512-13 (9th Cir. 1991) (finding insufficient evidence that defendants "conspired" to distort the facts surrounding a shooting, although the agents had a post-shooting meeting to discuss the plaintiff's arrest, failed to explain an injury to the plaintiff's arm, and allegedly made false statements regarding the circumstances of the shooting).  Absent more, Plaintiff's allegations are too vague and conclusory to state a conspiracy claim.  Thus, the Court will dismiss without prejudice Plaintiff's conspiracy claims in Counts Two and Three.

### F.    Practice and Custom

Plaintiff's allegation in Count Three that Defendants Sanchez and Stickley "deliberately used their positions to violate policy that they have allowed a practice and

custom to be established to cover-up their inappropriate conduct" is vague and conclusory and insufficient to state claim against either Defendant.   Thus, the Court will dismiss without prejudice this portion of Count Three.

**V.    Leave to Amend**

For the foregoing reasons, Plaintiff's First Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.   Within 30 days, Plaintiff may submit a second amended complaint to cure the deficiencies outlined above.   The Clerk of Court will mail Plaintiff a court-approved form to use for filing a second amended complaint.   If Plaintiff fails to use the court-approved form, the Court may strike the second amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint."   The second amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint or First Amended Complaint by reference.   Plaintiff may include only one claim per count.

A second amended complaint supersedes the original Complaint and First Amended Complaint.   *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).   After amendment, the Court will treat the original Complaint and First Amended Complaint as nonexistent.   *Ferdik*, 963 F.2d at 1262.   Any cause of action that was raised in the original Complaint or First Amended Complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a second amended complaint.   *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

**VI.    Emergency Motion**

Plaintiff requests the Court order the preservation of video footage for a four-hour period on August 12, 2021, when a sergeant and two officers came to his cell and, pursuant to instructions from "higher Administrators," took Plaintiff's legal books and four boxes of legal documents from his cell.   Plaintiff contends that there was no penological reason

JDDL-K

1   for taking the legal books and documents and that after the boxes were in the prison
2   officials' possession, some of legal documents "pertinent to this case . . . are missing."
3   Plaintiff asserts that he intends on "litigating the taking of his legal documents" and that
4   the video footage "is the only factual proof that [he] can rely on."

5   Whether to grant or deny a motion for a temporary restraining order or preliminary
6   injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d
7   1130, 1132-33 (9th Cir. 1979). An injunction or restraining order is appropriate to grant
8   "intermediate relief of the same character as that which may be granted finally," but relief
9   is not proper when it is requested on matters lying wholly outside the issues in the suit.
10  *DeBeers Consol. Mines v. United States.*, 325 U.S. 212, 220 (1945). To obtain injunctive
11  relief, the party "must necessarily establish a relationship between the injury claimed in the
12  party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d
13  470, 471 (8th Cir. 1994) (per curiam). In other words, Plaintiff must seek injunctive relief
14  related to the merits of his underlying claims. Because Plaintiff's Emergency Motion
15  concerns a collateral matter unrelated to any claim raised in this action, the Court, in its
16  discretion, will deny without prejudice Plaintiff's Emergency Motion.

17  **VII.   Warnings**

18  **A.   Release**

19  If Plaintiff is released while this case remains pending, and the filing fee has not
20  been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court
21  that he intends to pay the unpaid balance of his filing fee within 120 days of his release or
22  (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may
23  result in dismissal of this action.

24  **B.   Address Changes**

25  Plaintiff must file and serve a notice of a change of address in accordance with Rule
26  83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other
27  relief with a notice of change of address. Failure to comply may result in dismissal of this
28  action.

### C.    Possible "Strike"

Because the First Amended Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file a second amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Plaintiff's Motion to Insert Page (Doc. 20) is **granted**.

(2)    The First Amended Complaint (Doc. 19) is **dismissed** for failure to state a claim.  Plaintiff has **30 days** from the date this Order is filed to file a second amended complaint in compliance with this Order.

(3)    If Plaintiff fails to file a second amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g) and deny any pending unrelated motions as moot.

(4)    Plaintiff's Emergency Motion to Request that the Court Issue an Order to Preserve (Doc. 21) is **denied without prejudice**.

. . . .

1        (5)    The Clerk of Court must mail Plaintiff a court-approved form for filing a

2    civil rights complaint by a prisoner.

3        Dated this 20th day of August, 2021.

4

5    *Michael T. Liburdi*

6                        Michael T. Liburdi

7                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JDDL-K

**Instructions for a Prisoner Filing a Civil Rights Complaint
in the United States District Court for the District of Arizona**

1. <u>Who May Use This Form</u>.   The civil rights complaint form is designed to help incarcerated persons prepare a complaint seeking relief for a violation of their federal civil rights.   These complaints typically concern, but are not limited to, conditions of confinement.   **This form should not be used to challenge your conviction or sentence**.   If you want to challenge a state conviction or sentence, you should file a petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody.   If you want to challenge a federal conviction or sentence, you should file a motion under 28 U.S.C. § 2255 to vacate sentence in the federal court that entered the judgment.

2. <u>The Form</u>.   **Local Rule of Civil Procedure (LRCiv) 3.4 provides that complaints by incarcerated persons must be filed on the court-approved form.**   The form must be typed or neatly handwritten. The form must be completely filled in to the extent applicable.   All questions must be answered clearly and concisely in the appropriate space on the form.   If needed, you may attach additional pages, **but no more than fifteen additional pages**, of standard letter-sized paper. You must identify which part of the complaint is being continued and number all pages. If you do not fill out the form properly, you will be asked to submit additional or corrected information, which may delay the processing of your action.   You do not need to cite law.

3. <u>Your Signature</u>.   You must tell the truth and sign the form.   If you make a false statement of a material fact, you may be prosecuted for perjury.

4. <u>The Filing and Administrative Fees</u>.   The total fees for this action are $402.00 ($350.00 filing fee plus $52.00 administrative fee).   If you are unable to immediately pay the fees, you may request leave to proceed in forma pauperis.   Please review the "Information for Prisoners Seeking Leave to Proceed with a (Non-Habeas) Civil Action in Federal Court In Forma Pauperis Pursuant to 28 U.S.C. § 1915" for additional instructions.

5. <u>Original and Judge's Copy</u>.   You must send an **original plus one copy** of your complaint and of any other documents submitted to the Court.   You must send one additional copy to the Court if you wish to have a file-stamped copy of the document returned to you.   All copies must be identical to the original.   Copies may be legibly handwritten.   **This section does not apply to inmates housed at an Arizona Department of Corrections facility that participates in electronic filing.**

6. <u>Where to File</u>.   You should file your complaint in the division **where you were confined when your rights were allegedly violated**.   *See* LRCiv 5.1(a) and 77.1(a).   If you were confined in Maricopa, Pinal, Yuma, La Paz, or Gila County, file in the Phoenix Division.   If you were confined in Apache, Navajo, Coconino, Mohave, or Yavapai County, file in the Prescott Division. If you were confined in Pima, Cochise, Santa Cruz, Graham, or Greenlee County, file in the Tucson Division.   **Mail the original and one copy of the complaint with the $402 filing and administrative fees or the application to proceed in forma pauperis to:**

Revised 12/1/20

<u>Phoenix & Prescott Divisions</u>:     **OR**     <u>Tucson Division</u>:
U.S. District Court Clerk                              U.S. District Court Clerk
U.S. Courthouse, Suite 130                     U.S. Courthouse, Suite 1500
401 West Washington Street, SPC 10      405 West Congress Street
Phoenix, Arizona   85003-2119                Tucson, Arizona   85701-5010

7.   <u>Change of Address</u>.   You must immediately notify the Court and the defendants in writing of any change in your mailing address.   **Failure to notify the Court of any change in your mailing address may result in the dismissal of your case.**

8.   <u>Certificate of Service</u>.   You must furnish the defendants with a copy of any document you submit to the Court (except the initial complaint and application to proceed in forma pauperis). Each original document (except the initial complaint and application to proceed in forma pauperis) must include a certificate of service on the last page of the document stating the date a copy of the document was mailed to the defendants and the address to which it was mailed.   *See* Fed. R. Civ. P. 5(a), (d).   Any document received by the Court that does not include a certificate of service may be stricken.   **This section does not apply to inmates housed at an Arizona Department of Corrections facility that participates in electronic filing.**

A certificate of service should be in the following form:

I hereby certify that a copy of the foregoing document was mailed this _____ (month, day, year) to:
Name:   _____
Address:_____
              Attorney for Defendant(s)

_____
(Signature)

9.   <u>Amended Complaint</u>.   If you need to change any of the information in the initial complaint, you must file an amended complaint.   The amended complaint must be written on the court-approved civil rights complaint form.   You may file one amended complaint without leave (permission) of Court within 21 days after serving it or within 21 days after any defendant has filed an answer, whichever is earlier.   *See* Fed. R. Civ. P. 15(a).   Thereafter, you must file a motion for leave to amend and lodge (submit) a proposed amended complaint.   LRCiv 15.1.   In addition, an amended complaint may not incorporate by reference any part of your prior complaint. LRCiv 15.1(a)(2).   **Any allegations or defendants not included in the amended complaint are considered dismissed**.   All amended complaints are subject to screening under the Prison Litigation Reform Act; screening your amendment will take additional processing time.

10.   <u>Exhibits</u>.   You should not submit exhibits with the complaint or amended complaint. Instead, the relevant information should be paraphrased.   You should keep the exhibits to use to support or oppose a motion to dismiss, a motion for summary judgment, or at trial.

11.   <u>Letters and Motions</u>.   It is generally inappropriate to write a letter to any judge or the staff of any judge.   The only appropriate way to communicate with the Court is by filing a written pleading or motion.

2

12.   <u>Completing the Civil Rights Complaint Form</u>.

**HEADING:**

    1.   <u>Your Name</u>.   Print your name, prison or inmate number, and institutional mailing address on the lines provided.

    2.   <u>Defendants</u>.   If there are **four or fewer** defendants, print the name of each.   If you name **more than four** defendants, print the name of the first defendant on the first line, write the words "and others" on the second line, and attach an additional page listing the names of **all** of the defendants.   Insert the additional page after page 1 and number it "1-A" at the bottom.

    3.   <u>Jury Demand</u>.   If you want a jury trial, you must write "JURY TRIAL DEMANDED" in the space below "CIVIL RIGHTS COMPLAINT BY A PRISONER."   Failure to do so may result in the loss of the right to a jury trial.   A jury trial is not available if you are seeking only injunctive relief.

**Part A.   JURISDICTION:**

    1.   <u>Nature of Suit</u>. Mark whether you are filing the complaint pursuant to 42 U.S.C. § 1983 for state, county, or city defendants; "*Bivens v. Six Unknown Federal Narcotics Agents*" for federal defendants; or "other."   If you mark "other," identify the source of that authority.

    2.   <u>Location</u>.   Identify the institution and city where the alleged violation of your rights occurred.

    3.   <u>Defendants</u>.   Print all of the requested information about each of the defendants in the spaces provided.   If you are naming more than four defendants, you must provide the necessary information about each additional defendant on separate pages labeled "2-A," "2-B," etc., at the bottom.   Insert the additional page(s) immediately behind page 2.

**Part B.   PREVIOUS LAWSUITS:**

    You must identify any other lawsuit you have filed in either state or federal court while you were a prisoner.   Print all of the requested information about each lawsuit in the spaces provided.   If you have filed more than three lawsuits, you must provide the necessary information about each additional lawsuit on a separate page.   Label the page(s) as "2-A," "2-B," etc., at the bottom of the page and insert the additional page(s) immediately behind page 2.

**Part C.   CAUSE OF ACTION:**

    You must identify what rights each defendant violated.   The form provides space to allege three separate counts (**one violation per count**).   If you are alleging more than three counts, you must provide the necessary information about each additional count on a separate page.   Number the additional pages "5-A," "5-B," etc., and insert them immediately behind page 5.   Remember that you are limited to a total of fifteen additional pages.

3

1.  <u>Counts</u>.   You must identify which civil right was violated.  **You may allege the violation of only one civil right per count**.

2.  <u>Issue Involved</u>.   Check the box that most closely identifies the issue involved in your claim.  **You may check only one box per count**.  If you check the box marked "Other," you must identify the specific issue involved.

3.  <u>Supporting Facts</u>.   After you have identified which civil right was violated, you must state the supporting facts.  Be as specific as possible.  You must state what each individual defendant did to violate your rights.  If there is more than one defendant, you must identify which defendant did what act.  You also should state the date(s) on which the act(s) occurred, if possible.

4.  <u>Injury</u>.   State precisely how you were injured by the alleged violation of your rights.

5.  <u>Administrative Remedies</u>.   You must exhaust any available administrative remedies before you file a civil rights complaint.  *See* 42 U.S.C. § 1997e.  Consequently, you should disclose whether you have exhausted the inmate grievance procedures or administrative appeals for each count in your complaint.  If the grievance procedures were not available for any of your counts, fully explain why on the lines provided.

**Part D.   REQUEST FOR RELIEF:**
    Print the relief you are seeking in the space provided.

**SIGNATURE:**
    You must sign your name and print the date you signed the complaint.  Failure to sign the complaint will delay the processing of your action.  Unless you are an attorney, you may not bring an action on behalf of anyone but yourself.


## FINAL NOTE

    You should follow these instructions carefully.  Failure to do so may result in your complaint being stricken or dismissed.  All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number the pages.

_____
Name and Prisoner/Booking Number

_____
Place of Confinement

_____
Mailing Address

_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

_____ ,
(Full Name of Plaintiff)

               Plaintiff,

v.

(1) _____ ,
(Full Name of Defendant)

(2) _____ ,

(3) _____ ,

(4) _____ ,

           Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. _____
           (To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A.   JURISDICTION

1.    This Court has jurisdiction over this action pursuant to:
        ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
        ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
        ☐ Other: _____.

2.    Institution/city where violation occurred: _____.

**550/555**

## B.   DEFENDANTS

1.   Name of first Defendant: _____.  The first Defendant is employed as: _____ at_____.
(Position and Title)                                              (Institution)

2.   Name of second Defendant: _____.  The second Defendant is employed as: as: _____ at_____.
(Position and Title)                                              (Institution)

3.   Name of third Defendant: _____.  The third Defendant is employed as: _____ at_____.
(Position and Title)                                              (Institution)

4.   Name of fourth Defendant: _____.  The fourth Defendant is employed as: _____ at_____.
(Position and Title)                                              (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.   PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?        ☐ Yes        ☐ No

2.   If yes, how many lawsuits have you filed? _____.   Describe the previous lawsuits:

    a.   First prior lawsuit:
        1.   Parties: _____ v. _____
        2.   Court and case number:  _____.
        3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____.

    b.   Second prior lawsuit:
        1.   Parties: _____ v. _____
        2.   Court and case number:  _____.
        3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____.

    c.   Third prior lawsuit:
        1.   Parties: _____ v. _____
        2.   Court and case number:  _____.
        3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.   CAUSE OF ACTION

### COUNT I

1.   State the constitutional or other federal civil right that was violated: _____

_____.

2.   **Count I**.   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
  ☐ Basic necessities          ☐ Mail             ☐ Access to the court       ☐ Medical care
  ☐ Disciplinary proceedings   ☐ Property         ☐ Exercise of religion      ☐ Retaliation
  ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count I.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.   **Administrative Remedies:**
  a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                          ☐ Yes      ☐ No
  b.   Did you submit a request for administrative relief on Count I?      ☐ Yes      ☐ No
  c.   Did you appeal your request for relief on Count I to the highest level?   ☐ Yes      ☐ No
  d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____
_____.

## COUNT II

1.    State the constitutional or other federal civil right that was violated: _____
_____.

2.    **Count II.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
☐ Basic necessities          ☐ Mail              ☐ Access to the court        ☐ Medical care
☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion       ☐ Retaliation
☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3.    **Supporting Facts.**   State as briefly as possible the FACTS supporting Count II.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.    **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.    **Administrative Remedies.**
      a.    Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                   ☐ Yes       ☐ No
      b.    Did you submit a request for administrative relief on Count II?            ☐ Yes       ☐ No
      c.    Did you appeal your request for relief on Count II to the highest level?   ☐ Yes       ☐ No
      d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____
            _____.

4

## COUNT III

1.  State the constitutional or other federal civil right that was violated: _____

_____.

2.  **Count III.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.

☐ Basic necessities           ☐ Mail            ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings    ☐ Property        ☐ Exercise of religion     ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3.  **Supporting Facts.**   State as briefly as possible the FACTS supporting Count III.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.  **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.  **Administrative Remedies.**

a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                          ☐ Yes      ☐ No
b.   Did you submit a request for administrative relief on Count III?            ☐ Yes      ☐ No
c.   Did you appeal your request for relief on Count III to the highest level?   ☐ Yes      ☐ No
d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____

_____.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

_____

_____

_____

_____

_____

_____

_____.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____          _____
                         DATE                                                SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.