MDR

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Wayne Derello, Jr., | No. CV 21-00129-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Christopher Romero, et al., | |
| Defendants. | |

Plaintiff Douglas Wayne Derello, Jr., is confined in the Arizona State Prison Complex-Eyman (ASPC-Eyman), is proceeding pro se, and has been granted permission to proceed in forma pauperis. Pending before the Court is Plaintiff's Second Amended Complaint (Doc. 25).[1] The Court will order Defendant Romero to answer the threat-to-safety claim in Count One and the retaliation claims regarding Defendant Romero's alleged incitement of inmates in Counts One and Two, and will dismiss the remaining claims and Defendants.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff

---

[1] The Court dismissed Plaintiff's original Complaint because it did not comply with Rule 8 of the Federal Rules of Civil Procedure and Rule 3.4 of the Local Rules of Civil Procedure, and dismissed Plaintiff's First Amended Complaint because he had failed to state a claim.

TERMPSREF

has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.  Second Amended Complaint**

In his two-count Second Amended Complaint, Plaintiff alleges his Eighth Amendment rights were violated and seeks monetary damages from Defendants Lieutenant Duron, Special Security Unit (SSU) Sergeant Christopher Romero, Sergeant Griggs, Disciplinary Coordinator Hiatt, and Officers Bustillos, Diaz, Ortiz, and Maydon.

In **Count One**, Plaintiff alleges that on June 9, 2020, Defendant Romero tried to solicit Plaintiff to become an informant, but Plaintiff declined and subsequently informed a correctional officer. The correctional officer wrote an incident report and attempted to get Plaintiff moved to a yard where Defendant Romero did not work, but the correctional officer's attempt failed. Plaintiff then filed a grievance against Defendant Romero.

Plaintiff claims that on July 20, 2020, he was moved to ASPC-Eyman's Cook Unit. When he arrived, other prisoners told him that he could not stay on the unit because SSU had revealed that Plaintiff was "telling" and "filing grievances against [Defendant] Romero." Plaintiff asserts that several prisoners on the Cook Unit have provided declarations stating that before Plaintiff arrived, Defendant Romero had called inmates to the SSU, told them about Plaintiff's grievance, and instructed them to "provide [Defendant Romero] with a reason for [Plaintiff] not to be placed on the yard." In addition, Defendant Romero allegedly admitted to Plaintiff in August 2020 that he knew the prisoners had approached Plaintiff, claimed "SSU put out[] that [Plaintiff] was a snitch," and stated that "he put in place that Plaintiff would not be jumped by a group of [p]risoners all at once."

Plaintiff contends Defendant Romero incited a threat to Plaintiff's safety as retaliation for Plaintiff filing a grievance, did nothing to protect Plaintiff, and allowed Plaintiff to be "set[ ]up with a knife by prisoner to get [Plaintiff] off [the] Cook Unit yard." He alleges this resulted in "long[-]term segregation placement."

Plaintiff also claims Defendant Romero knew of Plaintiff's medical condition and knew Plaintiff was in a vulnerable, high-risk group to contract COVID-19, yet placed Plaintiff in a housing unit he knew was infected with COVID-19. Plaintiff claims he contracted the virus, became ill, and suffered unnecessarily.

In **Count Two**, Plaintiff alleges Defendant Romero "told[] prisoners to come[ ]up with a reason to get [P]laintiff off of [the] Cook Unit," knew prisoners were "going to plant a knife to frame [P]laintiff," but did not inform Plaintiff, did not stop the prisoners, and allowed the prisoners to plant a knife near Plaintiff because Plaintiff had filed a grievance against him. He claims Defendants Romero and Hiatt purposely failed to secure the

videotape that would have proved Plaintiff "did not know that [the] knife was there," denied Plaintiff the protection of the disciplinary policy, and violated the disciplinary policy "out of retaliation." Plaintiff alleges he did not receive a hearing to prove his innocence; Defendant Hiatt did not provide him with "all the eviden[ce]"; Defendant Hiatt deliberately violated the disciplinary policy to prevent Plaintiff from proving his innocence; Defendants Romero and Hiatt "falsified documents to conceal their malicious acts"; and Defendant Hiatt destroyed Plaintiff's appeal.

### III.     Discussion of Second Amended Complaint

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

#### A.     Defendants Duron, Griggs, Bustillos, Diaz, Ortiz, and Maydon

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged that Defendants Duron, Griggs, Bustillos, Diaz, Ortiz, and Maydon personally participated in a deprivation of Plaintiff's constitutional rights, were aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. Plaintiff has made no allegations at all against these Defendants. Thus, the Court

will dismiss without prejudice Defendants Duron, Griggs, Bustillos, Diaz, Ortiz, and Maydon.

### B. Defendants Romero and Hiatt

#### 1. Threat to Safety

Liberally construed, Plaintiff has stated an Eighth Amendment threat-to-safety claim against Defendant Romero for placing Plaintiff in a COVID-19 unit despite being aware Plaintiff was in a vulnerable, high-risk group to contract COVID-19. Thus, the Court will require Defendant Romero to answer this portion of Count One.

#### 2. Retaliation

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Liberally construed, Plaintiff has stated a retaliation claim against Defendant Romero in Counts One and Two based on his allegations that Defendant Romero incited the inmates to get Plaintiff off the Cook Unit. The Court will require Defendant Romero to answer this claim.

Plaintiff's allegations regarding Defendants' Romero and Hiatt's alleged violations of the disciplinary process are vague and conclusory and insufficient to state a retaliation

claim against either Defendant. Thus, the Court will dismiss without prejudice this retaliation claim against Defendants Romero and Hiatt.

### 3.  Due Process

In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguards. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff has failed to identify what sanctions, if any, were imposed as a result of the disciplinary violation and, therefore, it is unclear whether Plaintiff was subjected to atypical and significant hardships that would give rise to any due process procedural protections. Thus, the Court will dismiss without prejudice the due process claim against Defendants Romero and Hiatt.

. . . .

. . . .

## IV. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendant with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

. . . .

### D.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Defendants Duron, Griggs, Diaz, Maydon, Ortiz, Hiatt, and Bustillos are **dismissed** without prejudice.

(2)     Defendant Romero must answer the retaliation claim regarding Defendant Romero's incitement of inmates and the threat-to-safety claim in Second Amended Complaint.

(3)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Romero.

(4)     Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(5)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(6)     The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

(7)     The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendant must include a copy of this Order.

(8)     If Defendant agrees to waive service of the Summons and Second Amended Complaint, he must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(9)     The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)     personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

. . . .

. . . .

(10)   Defendant must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 17th day of November, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge