**WO**                                                                                        JDN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Douglas Wayne Derello, Jr.,

                 Plaintiff,

vs.

Christopher Romero, et al.,

                 Defendants.

No.   CV-21-00129-PHX-MTL (JFM)

**ORDER**

      Plaintiff Douglas Wayne Derello, Jr., who is confined at the Arizona State Prison Complex-Eyman, Cook Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections, Rehabilitation, and Reentry Sergeant Christopher Romero.  (Doc. 25.)  Before the Court are Defendant's Motion for Summary Judgment (Doc. 93) and Plaintiff's Motion for Court Assistance (Doc. 98).  The Court will deny Plaintiff's Motion as moot and grant in part and deny in part Defendant's Motion.

## I.        Background

      In his Second Amended Complaint, Plaintiff alleged that Defendant placed him in a COVID-19 housing unit despite being aware that he was in a high-risk group vulnerable to the effects of COVID-19.  (Doc. 25 at 7.)  Plaintiff also alleged that, after he filed a grievance that Defendant attempted to recruit him to be an informant, Defendant told other prisoners of Plaintiff's grievance, put out that Plaintiff was a snitch, and incited prisoners to get Plaintiff out of the Cook Unit.  (*Id.* at 6.)  Plaintiff claimed that Defendant allowed him to be set-up with a knife to get him ousted from the Cook Unit yard.  (*Id.*)

1    Upon screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff
2    sufficiently stated an Eighth Amendment threat-to-safety claim against Defendant for
3    allegedly placing Plaintiff in a COVID-19 unit despite being aware Plaintiff was in a high-
4    risk group vulnerable to the effects of COVID-19.  (Doc. 26 at 5.)  The Court also
5    determined that Plaintiff sufficiently stated a First Amendment retaliation claim against
6    Defendant for allegedly inciting prisoners to get Plaintiff off the Cook Unit.  (*Id.*)

7    Defendant moves for summary judgment on the grounds that Defendant was not
8    deliberately indifferent because he was not aware of Plaintiff's health condition and was
9    not involved with Plaintiff's housing, and he did not retaliate because he took no adverse
10   action against Plaintiff and was unaware of Plaintiff's grievance.  (Doc. 93.)[1]

11   After Defendant filed his Motion for Summary Judgment, Plaintiff filed his Motion
12   for Court Assistance.  (Doc. 98.)

13   **II.    Motion for Court Assistance**

14   In his Motion, Plaintiff requests an order for additional computer access, for Deputy
15   Warden Evans to be prevented from delaying Plaintiff's transfer out of the unit and from
16   harassing and retaliating against Plaintiff, and for Plaintiff to have access to the prison's
17   ADA liaison.  (Doc. 98.)

18   Relatedly, in a January 2022 Order, the Court granted Plaintiff's request for
19   injunctive relief in the form of an Order that Plaintiff be provided access to a unit computer
20   for 6 hours a week until his typewriter was fixed and available for use.  (Doc. 35.)
21   Defendants acknowledged that Plaintiff had been granted prior Court orders for typewriters
22   or computer access due to his medical condition and that his request for access to a
23   computer related to his access to the court.  (*Id.* at 4–5.)

24   Likewise, to the extent Plaintiff requests additional computer access in his pending

---

26   [1] Upon the filing of Defendant's Motion, the Court issued an Order with the Notice
27   required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1989) (en banc), which
     informed Plaintiff of the summary judgment requirements under Federal Rule of Civil
28   Procedure 56.  (Doc. 96.)

Motion, his request relates to his access to the court. *See Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (where the relief sought relates to a prisoner's access to the court, "a nexus between the preliminary relief and the ultimate relief sought is not required[,]" and the court need not consider the merits of the underlying complaint) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)).

In his Motion, Plaintiff states that, apparently in lieu of computer access or additional computer access, prison officials have provided him with a prisoner writer or scribe to assist with legal documents and filings. (Doc. 98 at 1–2.) Plaintiff alleges that Deputy Warden Evans attempted to assign a prisoner writer to Plaintiff with instructions to sabotage Plaintiff's legal filings. (*Id.* at 2.) Plaintiff also alleges that he is scheduled to move out of the unit, but he fears that Deputy Warden Evans may seek to interfere with his transfer. (*Id.*)

Deputy Warden Evans is not a party in this action. To the extent Plaintiff seeks relief from an unnamed non-party, the Court may issue an injunction against a non-party only where the non-party acts in active concert or participation with an enjoined party. Fed. R. Civ. P. 65(d)(2) (a preliminary injunction only binds those who receive actual notice of it by personal service or are parties, their officers, agents, servants, employees, and attorneys, and persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) ("[a] federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court"); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969). Here, Plaintiff has not established that the Court has jurisdiction to issue an injunction against any non-parties.

Moreover, the docket shows that, since filing his Motion for Court Assistance, Plaintiff filed a Motion to Inform Court of Writer, which stated that he had a new prisoner assigned as a writer and could now meet court deadlines. (Doc. 122.) Plaintiff expressed no complaint or concern about the assigned writer. (*See id.*) Plaintiff also filed a Notice of Change of Address showing that he was transferred from Special Management Unit

1  (SMU) I to the Cook Unit.  (Doc. 123.)  On this record, Plaintiff's request for injunctive
2  relief is moot.

3      For these reasons, the Court will deny Plaintiff's Request for Court Assistance.

4  **III.    Summary Judgment Standard**

5      A court must grant summary judgment "if the movant shows that there is no genuine
6  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
7  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A fact
8  is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only
9  if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno*
10 *Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).  The
11 movant bears the initial responsibility of presenting the basis for its motion and identifying
12 those portions of the record, together with affidavits, if any, that it believes demonstrate
13 the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  "[T]o carry its
14 burden of production, the moving party must either produce evidence negating an essential
15 element of the nonmoving party's claim or defense or show that the nonmoving party does
16 not have enough evidence of an essential element to carry its ultimate burden of persuasion
17 at trial."  *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

18     If the movant fails to carry its initial burden of production, the nonmovant need not
19 produce anything.  *Id.* at 1102–03 (9th Cir. 2000).  But if the movant meets its initial
20 responsibility, the burden then shifts to the nonmovant to produce evidence to support its
21 claim or defense.  *Id.* at 1103.  The nonmovant need not establish a material issue of fact
22 conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–
23 89 (1968); however, it must "come forward with specific facts showing that there is a
24 genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.
25 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

26     The judge's function is not to weigh the evidence and determine the truth but to
27 determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its
28 analysis, the court does not make credibility determinations; it must believe the

nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). Further, where the nonmovant is pro se, the court must consider as evidence in opposition to summary judgment all of the pro se litigant's contentions that are based on personal knowledge and that are set forth in verified pleadings and motions. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

**IV.    Relevant Facts**

According to Plaintiff's prison medical records, in addition to the conditions affecting his ability to write, Plaintiff suffers from hypertension, difficulty walking, gout, and gastro-esophageal reflux disease. (Doc. 94-3 at 2–3.) Plaintiff's conditions require use of a cane or walker and a CPAP machine. (*Id.* at 2.)

From April 2019 to July 2020, Plaintiff was housed at ASPC-Eyman, SMU. (Doc. 124 at 2, Pl. Decl. ¶ 6.) In June 2020, Defendant was a Correctional Sergeant at the ASPC-Eyman, Cook Unit. (Doc. 94-4 at 2, Def. Decl. ¶ 1.) Defendant is a member of the Special Security Unit (SSU), whose duties include gathering intelligence regarding prisoner activities, such as security threat group activity and contraband entering the prison. (*Id.* ¶ 4.) Defendant was never assigned to SMU; however, occasionally, his job duties required him to go to SMU. (*Id.* ¶ 13; Doc. 112 at 64, Def. Resp. to Req. for Admis. No. 1.)

Plaintiff avers that on June 9, 2020, Defendant was at SMU and tried to solicit him to become a confidential informant. (Doc. 25 at 6; Doc. 124 at 2, Pl. Decl. ¶ 5; Doc. 131 at 9.) Plaintiff declined, and he immediately informed his CO II of the incident. (Doc. 25 at 6; Doc. 124 at 2, Pl. Decl. ¶¶ 5, 27; Doc. 25 at 6.) Plaintiff filed a grievance against Defendant based on this June 9, 2020 encounter. (Doc. 25 at 6.) Defendant avers that he never sought to recruit Plaintiff as a confidential informant. (Doc. 94-4 at 4, Def. Decl.

¶ 16.)[2]

Prisoner Lee Roy Clemons was a prisoner at Cook Unit at the relevant time.  (Doc. 112 at 36, Clemons Decl.)  Clemons avers that he "spoke for the African American community on Cook Unit."  (*Id.*)   Around July 10, 2020, Clemons was called into Defendant's office; Defendant told Clemons that Plaintiff would be coming to the yard and asked whether he had any problem with Plaintiff coming to the yard.  (*Id.*)[3]  Defendant stated that, if there was any reason to keep Plaintiff from coming, it was Clemons' responsibility to protect his community.  (*Id.*)  Clemons responded that he had no problem, he knew Plaintiff, and their relationship was cool.  (*Id.*)  Defendant told Clemons that Plaintiff had filed grievances against him.  (*Id.*)  Clemons responded that was between Defendant and Plaintiff and had nothing to do with Clemons and how he did things.  (*Id.*)

Defendant avers that he never spoke about Plaintiff with any prisoners prior to Plaintiff's arrival at the Cook Unit.  (Doc. 94-4 at 4, Def. Decl. ¶ 26.)

On July 20, 2020, Plaintiff, who at that time was in a wheelchair, was moved from SMU to the Cook Unit.  (Doc. 124 at 2, Pl. Decl. ¶ 4.)  When he arrived at Cook Unit Intake, the Intake Officer said Defendant was waiting for Plaintiff; the Intake Officer radioed Defendant, they had a short conversation, and then the Intake Officer said that Plaintiff was moving to Housing Unit 7.  (Doc. 131 at 22.)  Prior to Plaintiff's arrival at the Cook Unit, Housing Unit 7 had been on quarantine for COVID-19.  (Doc. 112 at 38, Ibn-Woods Decl. ¶ 6.)

Within minutes of his arrival on the Cook Unit yard, Plaintiff was approached by a group of hostile prisoners who said that Plaintiff was a snitch and had filed grievances against Defendant, and these prisoners told Plaintiff to leave the Unit.  (Doc. 124 at 2–3,

---

[2] Defendant also avers that he does not recall speaking to Plaintiff while Plaintiff was at SMU, and he does not recall talking to Plaintiff about him becoming a confidential informant. (Doc. 94-4 at 3, Def. Decl. ¶¶ 14–15.)   A failure to remember factual information is insufficient to defeat summary judgment because it does not show personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4) (sworn statement used to support summary judgment motion must be made on personal knowledge).

[3] Plaintiff is African American.

Pl. Decl. ¶ 9; Doc. 25 at 6; Doc. 131 at 11.)[4]

On August 27, 2020, Plaintiff tested positive for COVID-19.  (Doc. 124 at 4, Pl. Decl. 19.)

On August 27, 2020, at about 2:15 a.m., CO Gonzalez was monitoring a mass movement of prisoners from building seven to building six.  (Doc. 94-2 at 7.)  An Incident Report notes that this was a "COVID Positive Move."  (Doc. 112 at 24.)  All the prisoners being moved, including Plaintiff, had to pack up their property and take it with them.  (Doc. 124 at 5, Pl. Decl. ¶ 33.)  While outside the buildings, Plaintiff stood up from his wheelchair and attempted to fix his belongings, then his wheelchair rolled backwards about seven feet and flipped over.  (*Id.* ¶¶ 12–13; Doc. 94-2 at 7; Doc. 131 at 3.)  CO Gonzalez saw a large manilla envelope fall out of the wheelchair.  (Doc. 94-2 at 7.)  The envelope fell from the pouch located on the backside of the wheelchair.  (Doc. 131 at 3.)  In the Use of Force/Incident form, CO Gonzalez documented that he saw a metal object protruding from the envelope.  (Doc. 94-2 at 7.)  The metal object was a prison-made weapon approximately seven inches in length with a sharpened point.  (*Id.* at 6.)  Plaintiff claims that he had no knowledge of this object, and he had never seen or touched it.  (Doc. 124 at 4, Pl. Decl. ¶ 16; Doc. 131 at 3.)  CO Gonzales confiscated the weapon and placed Plaintiff on disciplinary report.  (Doc. 124 at 4, Pl. Decl. ¶ 14; Doc. 94 ¶ 8; Doc. 92-4 at 6.)

The disciplinary report required Plaintiff to be transferred to detention; however, he had to wait hours before the transport.  (Doc. 131 at 16.)  During that time, Defendant spoke to Plaintiff.  (*Id.*)  Defendant told Plaintiff he knew prisoners had approached him upon his arrival to Cook Unit, and that SSU had "put out" that Plaintiff was a snitch.  (*Id.*)  Defendant said he informed prisoners they could not "group jump" Plaintiff because Plaintiff was "too old for that."  (Doc. 124 at 3, Pl. Decl. ¶ 10.)

Later that morning, Plaintiff was transferred to SMU I detention.  (Doc. 94-1 at 14; Doc. 94-2 at 12.)

---

[4] The Department of Corrections was unable to find the video footage of the July 20, 2020 altercation.  (Doc. 112 at 70, Def.'s Resp. to Req. for Production No. 1.)

On September 7, 2020, Plaintiff was seen by medical; at that time, he was not experiencing any COVID symptoms.  (Doc. 124 at 4, Pl. Decl. ¶ 20; Doc. 94-3 at 2, 4.)

On September 17, 2020, Investigator CO Hiatt completed an Inmate Discipline-Investigative Report regarding the August 27, 2020 incident; the Report documented that it was Plaintiff's first violation for a weapon and that no video of the incident was available. (Doc. 112 at 12.)[5]

Plaintiff had a disciplinary hearing on September 22, 2020.  (Doc. 124 at 4, Pl. Decl. ¶ 21.)  The Disciplinary Hearing Officer, Captain Simpson, postponed the hearing to seek video or photographic evidence.  (Doc. 112 at 22.)

On October 1, 2020, Plaintiff had another disciplinary hearing before Captain Brennan, who found Plaintiff guilty of a major violation based on the disciplinary report and investigatory report.  (Doc. 112 at 19.)  The disciplinary hearing findings were upheld on appeal.  (*Id.* at 15.)

In January 2021, Plaintiff was transferred to SMU I.  (Doc. 94-1 at 14.)

## V.    Eighth Amendment Threat to Safety

### A.    Legal Standard

To support a threat-to-safety claim, a plaintiff must allege facts to show that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks.  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).  A plaintiff must demonstrate facts that satisfy a two-part test: (1) that the alleged deprivation was, objectively, sufficiently serious, and (2) that the official was, subjectively, deliberately indifferent to the prisoner's safety.  *Id.* at 834.  To show deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to prisoner safety.  *Id.* at 837.  As to the knowledge component, "the official must both [have been] aware of facts from which the inference could be drawn that a

---

[5] Plaintiff presents numerous facts regarding the alleged deficiencies in the disciplinary hearing process.  (*See* Doc. 131 at 3–7.)  Because Plaintiff's due process claims related to the disciplinary hearing were dismissed on screening, the Court includes only a brief summary of the resulting disciplinary process.  (*See* Doc. 26 at 6.)

1    substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference."

2    *Id.*  To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in

3    fact, the very obviousness of the risk may be sufficient to establish knowledge.  *Id.* at 842.

4         **B.     Discussion**

5              The first question in the deliberate indifferent analysis is whether Plaintiff was

6    placed in conditions that, objectively, posed a substantial risk of serious harm.  *Id.* at 834.

7    Plaintiff alleges that placement in Cook Housing Unit 7 presented a threat to his health and

8    safety because Housing Unit 7 had been under quarantine for COVID-19 prior to his

9    arrival, and, due to his health conditions, Plaintiff was at a higher risk for getting very sick

10   from COVID-19.

11             Plaintiff fails to present facts or evidence to support that he was placed in conditions

12   that posed a substantial risk of serious harm.  Plaintiff's only claim is that Housing Unit 7

13   had previously been quarantined for COVID-19.  But Plaintiff does not allege that Housing

14   Unit 7 was still under quarantine or that it was unsanitary, that cleaning supplies were

15   unavailable, that masks were not provided, or that no steps were taken to encourage

16   physical distancing in Unit 7.  *See Plata v. Newsom*, 445 F. Supp. 3d 557, 567 (N.D. Cal.

17   2020) (finding that prison housing arrangements were not objectively unreasonable where

18   steps were taken to encourage physical distancing and to implement policies and practices

19   that comply with CDC recommendations).  Plaintiff does not present any specific facts or

20   evidence of the conditions in Unit 7 that purportedly presented a risk to his health or safety.

21   Indeed, Plaintiff was not diagnosed with COVID-19 until more than one month after his

22   transfer to Cook Housing Unit 7.  (Doc. 124 at 4, Pl. Decl. ¶ 19.)  Thus, it is not evident

23   that Plaintiff contracted the virus because he lived in Housing Unit 7 as opposed to a contact

24   on the yard or somewhere else in the prison facility.

25             In short, Plaintiff cannot establish a question of fact as to the objective element of

26   Plaintiff's Eighth Amendment threat-to-safety claim, and the Court need not address the

27   subjective element.  Plaintiff's claim fails, and summary judgment will be granted to

28   Defendant on the threat-to-safety claim.

**VI.     First Amendment Retaliation**

      **A.     Legal Standard**

      A viable claim of First Amendment retaliation contains five elements: (1) an assertion that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the prisoner's exercise of his First Amendment rights (or that the prisoner suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–58 (9th Cir. 2005). Mere speculation that a defendant acted out of retaliation is not sufficient to sustain a retaliation claim. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

      **B.     Discussion**

          **1.     Protected Speech**

      Prisoners have a First Amendment right to file prison grievances, *Rhodes*, 408 F.3d 559, 566 (9th Cir. 2005), and "a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

      Taking Plaintiff's facts as true, Plaintiff filed a grievance against Defendant regarding Defendant's June 9, 2020 contact with Plaintiff at SMU. This constituted protected speech for purposes of a First Amendment retaliation claim.

          **2.     Adverse Action**

      An "adverse action need not be an independent constitutional violation." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Indeed, the "mere threat of harm can be an adverse action." *Id.* (citation omitted). The Ninth Circuit has found that labeling a prisoner a snitch and subjecting a prisoner to retaliation by other prisoners constitutes an adverse action. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).

      Although Defendant avers that he never told any prisoners at the Cook Unit that

1   Plaintiff would be coming to the Unit and that Plaintiff filed a grievance against Defendant,

2   Plaintiff's evidence supports that Defendant told at least one prisoner at the Cook Unit that

3   Plaintiff would be arriving at the Unit and that Plaintiff had filed grievances against him.

4   (Doc. 112 at 36.)   Further, Plaintiff avers that Defendant admitted to him that SSU—

5   Defendant's department—"put out that [Plaintiff] was a snitch."  (Doc. 25 at 6; Doc. 131

6   at 16.)

7        If a jury believes Plaintiff's evidence, it could find that Defendant's actions

8   constituted an adverse action.

9                    **3.    Causation**

10       Under the third element, a plaintiff must show that his "protected conduct was a

11  'substantial' or 'motivating' factor" behind the defendant's conduct."  *Brodheim*, 584 F.3d

12  at 1271 (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).

13  To create a genuine issue of material fact on causation or motive, a plaintiff must establish,

14  "in addition to evidence that the defendant knew of the protected speech, at least (1)

15  evidence of proximity in time between the protected speech and the allegedly retaliatory

16  decision, (2) evidence that the defendant expressed opposition to the speech, or (3)

17  evidence that the defendant's proffered reason for the adverse action was false or

18  pretextual."  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and

19  emphasis omitted); *see Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002).

20       Defendant argues that Plaintiff cannot show causation because there is no evidence

21  that Defendant planted or directed others to plant the knife that was found on Plaintiff

22  during the August 27, 2020 building move.  (Doc. 133 at 6.)  Defendant further argues that,

23  because there is also no evidence showing that Defendant was responsible for the resulting

24  disciplinary charge, there is no showing that Plaintiff received disciplinary because of his

25  grievance against Defendant.  (*Id.*; Doc. 93 at 9.)

26       The Court agrees that there is no evidence connecting Defendant to the August 27,

27  2020 weapon incident that resulted in Plaintiff's disciplinary charge and, thus, no causal

28  connection between Plaintiff's grievance against Defendant and Plaintiff's disciplinary

1  violation.

2      But Defendant fails to address whether there is a causal connection between

3  Plaintiff's grievance and the threats Plaintiff received upon his arrival at the Cook Unit on

4  July 20, 2020. (*See* Docs. 93, 133.)  When viewing the facts in the light most favorable to

5  Plaintiff and resolving all factual disputes in his favor, Defendant was aware Plaintiff filed

6  a grievance against him; Defendant informed a Cook Unit prisoner that Plaintiff had filed

7  a grievance against him; and Defendant "put out" that Plaintiff was a snitch prior to

8  Plaintiff's arrival at the Cook Unit.  Plaintiff's evidence supports that Defendant's actions

9  occurred in close proximity to the June 9, 2020 encounter and Plaintiff's subsequent

10  grievance, and that Defendant was opposed to Plaintiff's grievance.  Defendant avers that

11  he was not aware of Plaintiff's grievance, that he did not tell any prisoners at the Cook Unit

12  about Plaintiff's grievance, and that he never identified Plaintiff as a snitch.  (Doc. 94-4 at

13  4, Def. Decl. ¶¶ 18, 22, 26.)  The Court may not weigh the evidence or engage in credibility

14  determinations; therefore, the conflicting evidence results in a dispute on the issue of

15  causation.  *See Anderson*, 477 U.S. at 255.  Accordingly, there exists a question of fact as

16  to the third element.

17          **4.      Remaining Elements**

18      Defendant does not address the last two elements of the retaliation standard—

19  whether Defendant's actions chilled Plaintiff's exercise of his First Amendment rights and

20  whether Defendant's actions reasonably advanced a legitimate correctional goal.  *Rhodes*,

21  408 F.3d at 567–58.[6]  Plaintiff was not obligated to present any defense to arguments not

22  raised in Defendant's Motion for Summary Judgment.  *See Nissan*, 210 F.3d at 1102–03;

23  *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (a pro se plaintiff cannot be

24  expected to anticipate and oppose arguments that a defendant does not make).

25  _____

26      [6] Defendant argues that disciplining Plaintiff for possessing a weapon furthered
legitimate correctional goes related to order, discipline, and security.  (Doc. 93 at 9–10.)
27  But Defendant does not address or present any argument regarding his alleged actions of
notifying Cook Unit prisoners that Plaintiff was coming to the unit, had filed a grievance
28  against Defendant, and was a snitch and whether these actions advanced a legitimate
correctional goal.  (*See* Doc. 93.)

- 12 -

Consequently, questions of fact remain as to the last two elements.

Considering the above, there is a triable issue of fact as to whether Defendant retaliated against Plaintiff in response to Plaintiff's grievance.  Summary judgment will be denied as to the First Amendment retaliation claim.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 93) and Plaintiff's Motion for Assistance (Doc. 98).

(2)     Plaintiff's Motion for Assistance (Doc. 98) is **denied** as moot.

(3)     Defendant's Motion for Summary Judgment (Doc. 93) is **granted in part** and **denied in part** as follows:

(a)     the Motion is **granted** as to Plaintiff's Eighth Amendment threat-to-safety claim, and this claim is **dismissed with prejudice**; and

(b)     the Motion is otherwise **denied**.

(4)     The remaining claim is Plaintiff's First Amendment retaliation claim against Defendant.

(5)     This action is referred to Magistrate Judge Eileen S. Willett to conduct a settlement conference.

(6)     Defense counsel shall arrange for the relevant parties to jointly call Magistrate Judge Willett's chambers at (602) 322-7620 within 14 days to schedule a date for the settlement conference.

Dated this 27th day of June, 2023.

_Michael T. Liburdi_
Michael T. Liburdi
United States District Judge